JAMES B. SMITH AND JEAN T. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 3778-89
United States Tax Court
T.C. Memo 1991-612; 1991 Tax Ct. Memo LEXIS 659; 62 T.C.M. (CCH) 1429; T.C.M. (RIA) 91612; December 10, 1991, Filed *659 An appropriate order will be entered.
James B. Smith, pro se. Victor A. Ramirez and Randall G. Durfee, for the respondent. GOFFE, Judge. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: JAMES B. SMITH
Taxable
Additions to Tax under Sections
Year
Deficiency
[1] 6651(a)(1) 6653(a)(1)
6653(a)(2)
1974
$ 1,807
$ 452
$ 90
*
1975
1,986
496
99
*
1976
2,578
644
129
*
1977
2,194
548
110
*
1978
2,459
615
123
*
1979
2,684
671
134
*
1980
3,163
791
158
*
1981
3,834
957
191
*
1982
589
-0-
-0-
N/A
1983
1,317
-0-
-0-
N/A
1984
2,001
-0-
-0-
N/A
Taxable
Additions to Tax under Sections
Year
6654
6653(b)(1)
6653(b)(2)
1974
$ 58
-0-
N/A
1975
86
-0-
N/A
1976
96
-0-
N/A
1977
78
-0-
N/A
1978
78
-0-
N/A
1979
112
-0-
N/A
1980
202
-0-
N/A
1981
295
-0-
N/A
1982
-0-
$ 294
**
1983
15
658
**
1984
58
1,000
**
*660 JEAN T. SMITH
Taxable
Additions to Tax under Sections
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1974
$ 818  $ 204
$ 41
*
1975
906
226
45
*
1976
1,436
359
72
*
1977
947
237
47
*
1978
1,101
275
55
*
1979
1,187
297
59
*
1980
1,475
369
74
*
1981
1,706
425
85
*
1982
589
-0-
-0-
N/A
1983
1,317
-0-
-0-
N/A
1984
2,001
-0-
-0-
N/A
Taxable
Additions to Tax under Sections
Year
6654
6653(b)(1)
6653(b)(2)
1974
$ 26
-0-
N/A
1975
39
-0-
N/A
1976
54
-0-
N/A
1977
34
-0-
N/A
1978
35
-0-
N/A
1979
50
-0-
N/A
1980
94
-0-
N/A
1981
131
-0-
N/A
1982
-0-
$ 294
**
1983
15
658
**
1984
58
1,000
**
JAMES B. SMITH AND JEAN T. SMITH
Addition to Tax under Sections
Year
Deficiency
6653(b)(1)
6653(b)(2)
1985
$ 1,930
$ 1,209
**
*661 The issues for decision are: (1) Whether the Commissioner correctly determined petitioners' income tax liabilities for the taxable years 1974-84; (2) whether the Commissioner correctly determined petitioners' joint income tax liability for the taxable year 1985; (3) whether petitioners are liable for the addition to tax under section 6653(a)(1) and (2) for negligent disregard of revenue laws for the taxable years 1974-81; (4) whether petitioners are liable for the addition to tax under section 6653(b)(1) and (2) for fraud for the taxable years 1982-85; (5) whether petitioners are liable for the addition to tax under section 6651(a)(1) for the failure to file returns for the taxable years 1974-81; (6) whether petitioners are liable for the addition to tax under section 6654 for failure to pay estimated tax for the taxable years 1974-81, 1983-84; and, finally, (7) whether petitioners are liable for a penalty under section 6673. FINDINGS OF *662 FACT James B. Smith and Jean T. Smith (husband and wife or, collectively, petitioners) were residents of Malad, Idaho, at the time the petition in this case was filed. Petitioners did not file Federal income tax returns for the taxable years 1974-84. Petitioners filed a joint Federal income tax return for 1985. Petitioners also did not maintain adequate records during the years in issue with which to prepare the tax returns that were required to be filed. On February 28, 1990, respondent served on petitioners a request for admissions pursuant to Rule 90. The Court filed what it deemed to be petitioners' response to the request for admissions on March 19, 1990, which this Court found to be insufficient and frivolous, thereby failing to comply with the requirements of Rule 90(c). In an Order dated April 11, 1990, we found petitioners' answers to be groundless within the meaning of section 6673. We ordered petitioners to properly answer respondent's request for admissions in full on or before May 14, 1990. Petitioners failed to make a written response as required by Rule 90(c). As a result, the matters in the request for admissions were automatically deemed admitted. Morrison v. Commissioner, 81 T.C. 644, 647 (1983). *663 During the years in issue, petitioners received income from the following sources: Year
Payor
Payee
Form
Amount
1980
LA-Z-Boy
James Smith
W-2
$ 458.11
1981
David J. Joseph
James Smith
W-2
80.00
1982
Thiokol, Inc.
James Smith
W-2
13,558.20
1983
Thiokol, Inc.
James Smith
W-2
22,121.06
1984
Thiokol CU
James Smith
1099-Int
18.00
1984
Thiokol, Inc.
James Smith
W-2
27,486.63
1984
Ireland Bank
Jean Smith
1099-Int
12.00
1985
Thiokol CU
James Smith
1099-Int
37.00
1985
Thiokol, Inc.
James Smith
W-2
28,304.92
$ 92,075.92
Mr. Smith claimed eight exemptions on the Form W-4, Employee's Withholding Exemption Certificate, for the period beginning April 1982 to January 30, 1984. He also claimed 14 exemptions during the period beginning January 31, 1984 to June 4, 1985. He then claimed an "exempt" status beginning June 5, 1985 to September 21, 1986. Petitioners were entitled to claim no more than two exemptions during the taxable years at issue. Petitioners filed a joint Federal income tax return for the taxable year 1985 which bore the notation, "filed under protest." They reported the wage income of Mr. Smith reflected on the Form W-2 and the interest income reflected *664 on the Form 1099-Int. They claimed four exemptions and a residential energy credit. They claimed a refund of income tax in the amount of $ 50. The return was due on or before April 15, 1986. It was stamped "RECEIVED OSC 118, FEB 22 1988, IRS-OGDEN, UTAH" which is nearly two years after the due date. No extension of time was sought by petitioners from, nor granted by, the Commissioner. The Commissioner mailed statutory notices of deficiency to petitioners on November 25, 1988. In the notices covering the taxable years 1974 through 1984, the Commissioner determined deficiencies in tax and additions to tax against each petitioner separately. The notice of deficiency covering the taxable year 1985 was based upon the examination of petitioners' joint return for the taxable year 1985. In that notice the Commissioner disallowed the residential energy credit and allowed only two of the four exemptions claimed. He also determined that the return was fraudulent and determined the addition to tax under section 6653(b)(1) and (2). OPINION Issue One: Determination of Tax for 1974-1984
We must first decide whether petitioners received taxable income for the taxable years 1974 through *665 1984, inclusive. Petitioners admit that they did not file income tax returns, therefore respondent was forced to reconstruct petitioners' income. Under section 446(a), a taxpayer's income is computed according to the taxpayer's regular method of accounting. If a taxpayer does not have a regular method of accounting, or if the method used does not clearly reflect income, section 446(b) empowers the Commissioner to devise a method that clearly reflects income. Cracchiola v. Commissioner, 643 F.2d 1383, 1385 (9th Cir. 1981), affg. a Memorandum Opinion of this Court. The Commissioner determined petitioners' income for the taxable years 1974 through 1981, inclusive, using data compiled by the Bureau of Labor Statistics. Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970). [2] For the taxable years 1982 through 1984, inclusive, respondent reconstructed petitioners' income using Forms W-2, Wage and Tax Statement, and Forms 1099-Int, Interest Income. *666 The Commissioner's method of calculation is presumptively correct. Avery v. Commissioner, 574 F.2d 467, 468 (9th Cir. 1978). Petitioners have the burden of proving the Commissioner's method to be wrong. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioners do not contest the accuracy of the reconstruction of their income by respondent. At trial, the Court asked: THE COURT:
Now what evidence are petitioners going to
offer to show that those amounts of income
are not correct?
THE WITNESS:
I'm not going to offer any evidence in that
respect, but I intend to enter evidence from
the Revenue Code as to who is and who isn't a
taxpayer. * * *
We thus conclude that petitioners' taxable income as reconstructed by respondent for the taxable years 1974 through 1984, inclusive, is correct. Petitioners have presented no evidence of any deductions or credits which would be allowable for those years. Issue Two: Determination of Tax for 1985
The Commissioner determined a deficiency in tax for the taxable year 1985 based upon disallowance of the residential energy credit and entitlement to two exemptions. Petitioners *667 offered no evidence to support allowance of the credit or the exemptions claimed over those disallowed. Accordingly, the determination of the Commissioner is sustained. Rule 142(a). Issue Three: Additions to Tax Under Section 6653(a)
The next issue for decision is whether petitioners are liable for the additions to tax under section 6653(a) for the negligent disregard of rules and regulations for the taxable years 1974-81. Section 6653(a) provides for the addition of an amount equal to 5 percent of the underpayment which is due to negligence or intentional disregard of rules or regulations (but without intent to defraud) and 50 percent of the interest payable on the underpayment. Section 6001 requires that every person liable to pay income tax to keep records of income so that the Commissioner will be able to determine tax liability. Petitioners are liable to pay income tax because they received compensation for services and interest income. Sec. 61(a)(1) and (4); Brushaber v. Union Pacific Railroad Co., 240 U.S. 1, 17, 60 L. Ed. 493, 36 S. Ct. 236 (1916); Rowlee v. Commissioner, 80 T.C. 1111, 1119-1120 (1983). Petitioners failed to exercise due care in that *668 they did not file tax returns which they knew they were required to do. Thompson v. Commissioner, 78 T.C. 558, 563 (1982); Robinson's Dairy, Inc. v. Commissioner, 35 T.C. 601, 608-609 (1961), affd. 302 F.2d 42 (10th Cir. 1962). Petitioners offered no records at trial; therefore, we conclude that they had none. Petitioners failed to maintain records as required by section 6001 and were negligent in not filing returns as required by law. Accordingly, we find for respondent on this issue. Issue Four: Additions to Tax Under Section 6653(b)
The next issue is whether petitioners are liable for additions to tax under section 6653(b) for the taxable years 1982-85. Section 6653(b) provides for an addition to the tax if any part of the underpayment is due to fraud and 50 percent of the interest payable on the underpayment attributable to fraud. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Stone v. Commissioner, 56 T.C. 213, 220 (1971); Rule 142(b). This burden may be met by showing there is an underpayment of tax and that the taxpayer intended to conceal, mislead, *669 or otherwise prevent the collection of taxes. Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Petitioners filed no returns for the taxable years 1982 through 1984. Accordingly, they underpaid their tax for those taxable years. An underpayment for purposes of section 6653(b) equals the amount of tax imposed if a return is not filed on or before the last day prescribed for filing. Sec. 6653(c)(1); sec. 301.6653-1(c)(1)(ii), Proced. and Admin. Regs. Petitioners filed a joint return for the taxable year 1985 on which they claimed credit for tax withheld from Mr. Smith's wages. The Commissioner allowed two of the four exemptions claimed and disallowed the residential energy credit which adjustments were not contested by petitioners. These adjustments produced a deficiency in income tax and an underpayment of income tax. Having found that there were underpayments of tax for the taxable years 1982 through 1985, the remaining question is whether such underpayments were due to fraud. The existence of *670 fraud is a question of fact to be resolved upon a consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent cannot satisfy his burden of proving fraud by relying solely on the failure of petitioners to discharge their burden of proving error in the determination of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); *671 Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra at 223-224. Courts have relied on a number of indicia of fraud in deciding section 6653(b) issues. See, e.g., Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), and cases cited therein. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive evidence. These "badges of fraud" include: (1) Understatement of income, Grudin v. Commissioner, 536 F.2d 295, 296 (9th Cir. 1976); Ruark v. Commissioner, 449 F.2d 311, 313 (9th Cir. 1971); Estate of Rau v. Commissioner, 301 F.2d 51, 54-55 (9th Cir. 1962); (2) inadequate records, Bradford v. Commissioner, supra at 307; Bahoric v. Commissioner, 363 F.2d 151, 153-154 (9th Cir. 1966); Factor v. Commissioner, 281 F.2d 100, 129 (9th Cir. 1960); (3) failure to file tax returns, Factor v. Commissioner, supra at 129; Powell v. Granquist, 252 F.2d 56, 61 (9th Cir. 1958); (4) failure *672 to cooperate with tax authorities, Bradford v. Commissioner, supra at 307-308; Ruark v. Commissioner, supra at 313; Powell v. Granquist, supra at 61; and (5) submission of false W-4 certificates, Hebrank v. Commissioner, 81 T.C. 640 (1983); Rowlee v. Commissioner, 80 T.C. at 1123-1126; Habersham-Bey v. Commissioner, 78 T.C. 304, 313-314 (1982). In a previous case in this Court involving these petitioners, petitioners had filed returns for the taxable years 1969 and 1970. Smith v. Commissioner, T.C. Memo 1985-167. Petitioners were, therefore, aware of the obligations to prepare and submit tax returns. We have also found that petitioners filed false W-4 certificates claiming excessive exemptions or "exempt" status when they were entitled to only two exemptions. This action further reveals petitioners' intent to evade the payment of income taxes. Petitioners refused to stipulate to undisputed facts and made no attempt to cooperate in any way with authorities from the Internal Revenue Service. Instead, they advanced nothing more *673 than the usual "protestor" arguments. Reliance upon frivolous tax protestor arguments which have often been rejected by the courts can be evidence of fraud. Castillo v. Commissioner, 84 T.C. 405, 410 (1985). We conclude, based upon the record before us, respondent has presented clear and convincing evidence of fraud by petitioners in this case. Accordingly, we sustain the determination that petitioners are liable for the additions to tax for fraud under section 6653(b) for the taxable years 1982-85. Issue Five: Additions to Tax Under Section 6651(a)(1)
The next issue for decision is whether petitioners are liable for additions to tax under section 6651(a)(1) for the taxable years 1974 through 1981. Section 6651(a)(1) imposes a 5-percent addition to the amount of tax due when a taxpayer fails to file an income tax return as required by the Code. This addition to the tax increases by 5 percent for each month that the return is not filed, but is not to exceed 25 percent in the aggregate. The addition will not be imposed if the failure to file the return "is due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1). Petitioners were well *674 aware of their obligation to file income tax returns. They have been the subject of previous cases before this Court advancing traditional well-worn tax protestor arguments. See Smith v. Commissioner, T.C. Memo 1979-51; Smith v. Commissioner, T.C. Memo 1985-167. The instant case is no different. Petitioners' reasons for not filing income tax returns were because they claim that: (1) They are not taxpayers under the Internal Revenue Code; (2) receipt of income is not a taxable event; (3) the Commissioner's authority to collect taxes was not properly delegated from the Secretary of the Treasury; (4) the regulations, forms, and letters used by the Internal Revenue Service violate the Paperwork Reduction Act because they do not have proper Office of Management and Budget (OMB) control numbers and expiration dates; and finally, (5) the Commissioner should have been collecting the taxes from them all along, and, petitioners argue, if we find against petitioners, this would effectively render them bankrupt. Petitioners' argument that they are not "taxpayers" is based upon their observation that the money they receive as wages from their labor *675 is "personal property." They contend that working for wages is a right secured by the U.S. Constitution. The Constitution, they argue, provides for two methods governing the collection of taxes: the rule of apportionment and the rule of uniformity. Of these two methods, petitioners' contend that neither method permits collection of tax measured by income. Assuming, without deciding, that petitioners' arguments are correct, it would appear that petitioners have failed to read the amendments to the Constitution. Upon ratification of the Sixteenth Amendment, it no longer makes a difference whether income tax falls under the rule of apportionment or uniformity. This amendment permits Congress to lay and collect tax on income from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. The validity of our income tax law has been upheld since its inception. Brushaber v. Union Pacific Railroad Co., 240 U.S. 1, 60 L. Ed. 493, 36 S. Ct. 236 (1916). As the Court of Appeals for the Fifth Circuit said in Crain v. Commissioner, 737 F.2d 1417, 1418 (5th Cir. 1984): We perceive no need to refute these arguments *676 with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit. The constitutionality of our income tax system -- including the role played within that system by the Internal Revenue Service * * * -- has long been established. * * *
The issue between apportionment versus uniformity is completely devoid of any arguable merit in law. The Court of Appeals for the Ninth Circuit has noted the "patent absurdity and frivolity of such a proposition." In re Becraft, 885 F.2d 547, 548 (9th Cir. 1989); see also United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990). Efforts to argue this issue as a means to avoid paying income tax have been held to be frivolous, even when raised by pro se litigants. Lovell v. United States, 755 F.2d 517, 519-520 (7th Cir. 1984). The argument by petitioners that the receipt of income is not a taxable event is equally groundless. Petitioners maintain that income taxes are "excises" (sic) and that "excises are levied upon the happening of an event -- Sales, Manufacturing, Consumption, Privileges, Licenses and Franchises." Petitioners *677 argue that the income tax as presently devised is an excise tax, and there must be one of these triggering events which they have set forth for such a tax to be valid. To the contrary, the income tax is a tax upon income. It is not an excise tax. Section 1.61-2(a)(1), Income Tax Regs., clearly includes wages within the definition of income. The authority to lay and collect these taxes is conclusively established by the Sixteenth Amendment. Stratton's Independence, Ltd. v. Howbert, 231 U.S. 399, 415, 58 L. Ed. 285, 34 S. Ct. 136 (1913); United States v. Buras, 633 F.2d 1356, 1361 (9th Cir. 1980); United States v. Russell, 585 F.2d 368, 370 (8th Cir. 1978). To argue otherwise is patently frivolous. The argument by petitioners that the tax forms which they were required to file did not comply with the Paperwork Reduction Act is likewise frivolous. This tired issue has been visited repeatedly by this and other courts. It has been conclusively settled. United States v. Collins, supra at 630-631, and cases cited therein. The Forms 1040 that petitioners were required to file all bore OMB numbers as required by the Paperwork *678 Reduction Act. Further, the additions to tax in issue here arose solely in relation to petitioners' failure to file Forms 1040 reporting their income, and the presence or absence of numbers on the tax forms is irrelevant. The Court of Appeals for the Tenth Circuit found, in United States v. Collins, supra at 631, that such an argument lacks "any arguable basis in fact or law" and is "legally frivolous." See also Neitzke v. Williams, 490 U.S. 319, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989) (defining legal frivolousness). [3]
Finally, petitioners argue in the alternative that if they are "taxpayers" as defined by the Code, that respondent is derelict in his duties for "lack of prosecution." Mr. Smith testified that respondent "waited nearly 12 years or longer before they [respondent] attempted to do anything, and now they're attempting to impose penalties pursuant to their lack *679 of prosecution, which would financially bankrupt the petitioners." Mr. Smith further testified that "the Revenue Service is well aware of who I am, where I live and could have prosecuted this case in order that petitioners' would have been spared the financial hardships of the -- case." Petitioners' argument that the Internal Revenue Service is in some way responsible for the magnitude of the additions to tax because it did not monitor petitioners' failure to file their tax returns each year is absurd. The tax system depends upon a scheme of self-assessment, albeit with the "encouragement" of additions to tax if the taxpayer negligently or intentionally disregards the law. Abrams v. Commissioner, 82 T.C. 403, 408 (1984) (citing Hatfield v. Commissioner, 68 T.C. 895, 899 (1977)). The onus for the initial assessment and reporting of the tax due is placed upon the taxpayer. We find this contention by petitioner without merit. Petitioners cite Yoshimura v. Alsup, 167 F.2d 104 (9th Cir. 1948), and they argue that this case stands for the proposition that if a tax "assessment would work a hardship on the plaintiffs [sic] *680 and -- and would destroy them financially, then the * * * taxpayers are entitled to an injunction against that assessment, so that they are not bankrupted by the assessment." The short response to petitioners' contention is that Yoshimura has nothing to do with the situation in issue here. Further, their characterization of the principle of law in Yoshimura is simply wrong. In Yoshimura, a taxpayer with limited knowledge of the English language was coerced into signing blank forms confessing tax liability. It was discovered that the taxpayer had innocently made a $ 150 bookkeeping error, but he was threatened with a "jail term or a huge fine" if he didn't sign the forms. Yoshimura v. Alsup, supra at 105. As a consequence of signing the forms, the taxpayer was assessed $ 6,325 as additional Federal income tax due and $ 3,162.51 in additions therefor. Yoshimura v. Alsup, supra.The court, finding these tactics egregious, permitted the taxpayer to continue with his lawsuit seeking to enjoin the Internal Revenue Service from the collection of the tax because the assessment was procured by fraud and coercion. The facts *681 in Yoshimura are completely inapposite to the instant case. Unlike the taxpayer in Yoshimura, petitioners made no attempt to cooperate in any way with revenue authorities. First, they did not file income tax returns at all for a decade. Then, when they filed a return "under protest" in 1985 and were contacted by the Internal Revenue Service, the Smiths carried on with amazing tenacity efforts to thwart orderly resolution of their case. The fault in resolving the deficiencies determined by the Service belongs to the Smiths' entirely, and they cannot look to the Yoshimura decision to shift responsibility for their own misbehavior. As an afterthought, petitioners make general assertions that the additions to tax under the circumstances are unjustified and unwarranted. We disagree. It is the precise action of these taxpayers for which such additions are entirely appropriate. All of petitioners' arguments are patently frivolous. We conclude that their failure to file tax returns was not due to reasonable cause but rather the result of intentional neglect. Therefore, we find for respondent and uphold his determination of the additions to tax provided by section 6651(a)(1) *682 for the taxable years 1974-81. Issue Six: Additions to Tax Under Section 6654
We must next decide whether respondent properly determined additions to tax under section 6654 for underpayments of estimated tax for the taxable years 1974 through 1981, inclusive, and for 1983 and 1984. Where prepayments of tax, either through withholding or by quarterly estimated tax payments, do not equal the percentage of total liability required under the statute, imposition of this addition is generally mandatory, unless the taxpayer shows that one of several statutory exceptions applies. Sec. 6654; Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Petitioners failed to introduce any evidence on this issue; accordingly, we sustain respondent's determination as to the section 6654 additions to tax. Reaver v. Commissioner, 42 T.C. 72, 83 (1964); Rule 142(a). Issue Seven: Penalty Under Section 6673
We next consider respondent's motion for a penalty under section 6673. Section 6673(a)(1), as amended by section 7731(a) of the Omnibus Budget Reconciliation Act of *683 1989, Pub. L. 101-239, 103 Stat. 2106, 2400 (applicable to positions taken after December 31, 1989, in proceedings pending on or commenced after such date), provides that: Whenever it appears to the Tax Court that -- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies,
the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000.
This proceeding involves in part the addition to tax for fraud. In this regard although we are normally reluctant to require a penalty in fraud cases, the record in this case establishes that petitioners have engaged in a crusade lasting more than a decade to simply ignore their obligation to pay income tax. This is not the first time that petitioners have wasted this Court's time. Petitioners have delayed consideration of other cases before this Court by requiring us to consider their worthless theories. It is unfair to other taxpayers with legitimate claims against the *684 Commissioner's determinations to permit tax protestors to repeatedly glut this Court's docket with these types of cases. We have issued fair warning that the continued use of frivolous arguments would be met with the full use of the penalty provisions provided to us by Congress. Abrams v. Commissioner, 82 T.C. 403, 408-412 (1984), and cases cited therein. Upon review of this record, we find that petitioners have instituted and maintained this action primarily for delay and that petitioners' position in this proceeding is frivolous and groundless. Accordingly, we hold that a penalty is appropriate in this case. Therefore, we will grant respondent's motion for a penalty, and in our decision we will require petitioners to pay to the United States a penalty of $ 10,000. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1974 through 1985, and Rule numbers refer to the Tax Court Rules of Practice and Procedure. 50 percent of the interest due on the portion of the underpayment attributable to negligence. 50 percent of the interest due on the underpayment attributable to fraud.
** 50 percent of the interest due on the underpayment attributable to fraud.
* 50 percent of the interest due on the portion of the underpayment attributable to negligence. ** 50 percent of the interest due on the underpayment attributable to fraud.↩
2. See also Greenway v. Commissioner, T.C. Memo 1987-4; Denson v. Commissioner, T.C. Memo 1982-360; Wheeling v. Commissioner, T.C. Memo 1982-246, affd. without published opinion 709 F.2d 1512 (6th Cir. 1983); Kindred v. Commissioner, T.C. Memo 1979-457, affd. 669 F.2d 400↩ (6th Cir. 1982).
3. Currier v. Commissioner, T.C. Memo 1991-194; Allnutt v. Commissioner, T.C. Memo 1991-6↩.