**RIVER CITY RANCHES;**
· et al., Petitioners,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 07–74301.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 2009.

Filed Feb. 26, 2009. .

Montgomery W. Cobb, Cobb & Bosse, LLP, Newberg, OR, Terri A. Merriam, Principal Litigation Counsel, Merriam & Associates, P.C., Seattle, WA, for Petitioners.

Anthony T. Sheehan, Esquire, Michael J. Haungs, DOJ–U.S. Department of Justice, Washington, DC, for Respondent.

Before: B. FLETCHER, RYMER and FISHER, Circuit Judges.

## MEMORANDUM *

River City Ranches # 1, Ltd. (RCR), a collection of partnerships, appeals the tax court's decision holding that the six-year statute of limitations under 26 U.S.C. § 6229(c)(1) is applicable and that the Commissioner correctly applied the penalty-interest provision of 26 U.S.C. § 6621(c) for tax-motivated transactions. We affirm.

## I

■■ The tax court correctly held that the statute of limitations for the Commissioner to send notice of final partnership administrative adjustments (FPAA) was extended to six years under 26 U.S.C. § 6229(c)(1). Section 6229(c)(1) applies when any partner who, "with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item." In the tax court, RCR contested only whether the promoter of the partnerships, Walter J. Hoyt, III, had the requisite intent to evade tax.[1]

■■ RCR principally argues that any evidence of Hoyt's specific intent to evade taxes is not from the relevant tax years at issue and that a basic tenet of tax law requires each year to stand on its own. The actual rule is not so clean cut; in the case of a continuing enterprise, operated the same way over the course of many years, evidence of intent to evade taxes in one year can be imputed to others. *Bahoric v. Comm'r*, 363 F.2d 151, 154 (9th Cir.1966) ("Petitioners say that fraud must be established for each year where fraud is asserted. That is true. But still, a pat-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. RCR claims to have contested whether the returns contained false or fraudulent items as well. However, the tax court explicitly stated only intent was at issue. In any event, the record is replete with evidence of false or fraudulent items contained in filed returns. RCR stipulated that a host of documentation that would undergird any return was false, necessarily implying the returns contained false items as well. Many of the RCR partnerships also specifically stipulated that the returns contained false or fraudulent items. Thus, to the extent the tax court determined RCR's returns contained false or fraudulent items, it did not err.

tern of conduct over a course can be applied to its segments.") Moreover, circumstantial or indirect evidence may be used to show an intent to evade taxes. *Maciel v. Comm'r*, 489 F.3d 1018, 1026 (9th Cir. 2007).

There was ample relevant evidence to support the tax court's holding that Hoyt prepared partnership returns with the intent to evade taxes: Hoyt was well educated and an IRS enrolled agent, indicating his sophistication[2]; he had almost exclusive control over the investment enterprise; the nature of the scam itself, which involved vastly overvaluing breeding sheep; and the method of preparing tax returns, which included preparing individual partner returns without partnership returns detailing appropriate pass through losses.[3] This evidence, over the course of many years, shows a continuing enterprise of tax evasive behavior sufficient to imply similar intentional evasive behavior was undertaken in the years at issue. *See Bahoric*, 363 F.2d at 154.

While RCR emphasizes the profit motives of the individual partners, this is irrelevant to a determination of Hoyt's intent. Section 6229(c)(1) requires consideration of the intent of the partner who participated in the preparation of the partnership returns—namely, Hoyt. Whether the individual partners intended fraud on their individual returns has no bearing on a partnership level proceeding. *Cf.* 26 U.S.C. § 6231(a)(3) (partnership items are required to be resolved at the partnership level).

Thus, although RCR contests the accuracy or weight of some of the evidence, it has not overcome the deference afforded the finder of fact, in this case the tax court. We are not "left with the definite and firm conviction that there was no clear and convincing evidence of fraud." *Maciel*, 489 F.3d at 1027 (quotation marks and citation omitted). "Treating the facts as a bundle, we find nothing clearly erroneous about the tax court's decision, awful as its consequences are to petitioners." *Bahoric*, 363 F.2d at 154.[4]

## II

■ Because the statute of limitations for supplying notice of an FPAA was extended to six years, we must determine whether the imposition of a penalty for tax-motivated transactions was appropriate under 26 U.S.C. § 6621(c).[5] The statute gives five examples of tax-motivated transactions, § 6621(c)(3)(A), but we decide only whether RCR engaged in sham or fraudulent transactions, § 6621(c)(3)(A)(v).[6]

---

**2.** RCR's argument that evidence of Hoyt's sophistication contained in internal IRS memoranda constitutes hearsay was not raised in the tax court and therefore was not properly preserved for appellate review. In any event, RCR does not contest that Hoyt actually was sophisticated.

**3.** RCR contests whether such evidence truly exists, but Henry Nathaniel, a former tax return preparer for the Hoyt organization, explicitly testified that during the time period he prepared individual partner returns, they were prepared before any partnership returns were completed.

**4.** Because we hold the six-year statute of limitations applies, we decline the Commission-

er's invitation to reach the question of whether the tax court erred in finding Hoyt had a conflict of interest such that the consents he signed extending the limitations period were invalid.

**5.** Section 6621(c) has since been repealed. The penalty remained in effect for all returns due prior to December 31, 1989. *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(b), (d), 103 Stat. 2106, 2399–2400.

**6.** Because we find RCR engaged in sham or fraudulent transactions, we decline to address the alternative argument that RCR's transactions contained valuation overstatements under 26 U.S.C. § 6621(c)(3)(A)(i).

A sham transaction is one that subjectively lacks a non-tax business purpose and objectively lacks economic substance beyond procuring tax benefits. *Sochin v. Comm'r*, 843 F.2d 351, 354 (9th Cir.1988), *abrogated on other grounds as recognized by Keane v. Comm'r*, 865 F.2d 1088, 1092 n. 8 (9th Cir.1989). Factors relevant to whether RCR engaged in sham transactions include whether fair market value was paid for assets, whether an interest (i.e., the benefits and risk of ownership) in property was actually transferred, whether debt used to finance the transaction created genuine liability, and whether there was an identifiable business purpose beyond relieving tax liability. *Sacks v. Comm'r*, 69 F.3d 982, 988 (9th Cir.1995). All of these factors cut against RCR: to the extent it did acquire any sheep, the claimed purchase price was far in excess of actual value; the parties stipulated that the benefits and burdens of ownership of sheep never passed to RCR; the parties stipulated that the promissory notes, assumption agreements, and security agreements used to finance the alleged sheep purchases were not valid recourse debt or were not legally enforceable; and there was no identifiable business purpose other than generating tax savings—after all, RCR purported to be a sheep breeding partnership yet, as far as can be told from the record, had no sheep.

RCR's argument that its transactions had a "modicum of economic substance" and thus were not shams is without merit as we have previously rejected such a low bar. *See Casebeer v. Comm'r*, 909 F.2d 1360, 1363 n. 8 (9th Cir.1990). Likewise, any argument that reliance on the factors outlined above ignores subjective factors that must also be considered fails. To the extent we are required to consider subjective factors at all, *see id.* (stating the two-pronged test should be flexibly applied), we would consider only the subjective intent of the partnership, not that of the individual partners. *Cf. Hill v. Comm'r*, 204 F.3d 1214, 1218 (9th Cir.2000) (discussing the concept of "profit motive" under 26 U.S.C. § 183 and noting "it is well established that the determination of an existing profit motive is made at the partnership level and does not address the subjective intent of the particular partner in question"). Viewing subjective intent at the partnership level, we divine no business purpose at all, other than to generate as much book loss as possible to "sell" to investors as tax savings. Exploiting the tax code was the singular goal.

Under these circumstances, the tax court did not clearly err when it determined the partnerships and the transactions they engaged in were shams. The tax-motivated transaction interest penalty under 26 U.S.C. § 6621(c) was correctly applied.[7]

**AFFIRMED.**

---

7. While we recognize § 6621(c) was ultimately repealed—likely because it was viewed as unduly punitive or draconian—Congress left it on the books for all returns due prior to December 31, 1989. *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(d), 103 Stat. 2106, 2400. We apply the law as it was, not as it becomes or as a litigant wishes it to have been.